**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-cv-23896-ALTMAN/Lett**

**KASHYAP BAKHAI**,

     *Petitioner,*

*v.*

**BDO USA, P.C.**,

     *Respondent.*

_____/

**ORDER ADOPTING IN PART AND
<u>REJECTING IN PART REPORT AND RECOMMENDATION</u>**

Our Petitioner, Kashyap Bakhai, filed a petition under Section 9 of the Federal Arbitration

Act ("FAA") "for the entry of an order confirming the Arbitration Award . . . issued by an arbitral

panel . . . of the American Arbitration Association ('AAA') in the arbitration captioned *Kashyap Bakhai*

*v. BDO USA, P.C.*, AAA Case No. 01-23-0002-5310[.]" Petition to Confirm Arbitration ("Petition")

[ECF No. 1] at 1. Bakhai then filed a motion to confirm the arbitration panel's "Final Award granting

Bakhai's motion for an award of attorney's fees, expenses, and the costs of arbitration." Motion to

Confirm Final Award ("Motion to Confirm") [ECF No. 40] at 1. The Respondent, BDO USA P.C.,

opposed the Petition and Motion and moved for us to vacate the arbitration award under Section 10

of the FAA. *See* Response in Opposition to the Petition and Cross-Motion to Vacate ("Motion to

Vacate") [ECF No. 23]. We referred both the Motion to Confirm and the Motion to Vacate to

Magistrate Judge Enjoliqué A. Lett for a Report and Recommendation. *See* Amended Order of Referral

[ECF No. 43].

On June 6, 2025, Magistrate Judge Lett entered a Report and Recommendation, suggesting

"that the Motion to Vacate be DENIED and the Motion to Confirm be GRANTED." Report and

Recommendation ("R&R") [ECF No. 75] at 2. Magistrate Judge Lett concluded that the arbitration

award should be confirmed because BDO failed to show (1) that "the panel impermissibly exceeded its authority[,]" *id.* at 6; (2) that BDO "was prejudiced by being prohibited from presenting material evidence of . . . BDO's investigation into Bakhai's misconduct [and] disclosure of confidential information[,]" *id.* at 10; or (3) that "the Award was procured by fraud due to perjured testimony[,]" *id.* at 13. Magistrate Judge Lett then cautioned the parties as follows:

> Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. FED. R. CIV. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. FED. R. CIV. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.

*Id.* at 17.

Both sides objected to Magistrate Judge Lett's R&R. *See* Bakhai's Limited Objection to R&R ("Bakhai Objections") [ECF No. 76]; Respondent's Objections to the R&R ("BDO Objections") [ECF No. 80].[1] The parties then responded to each other's objections. *See* Respondent's Response to Petitioner's Limited Objection ("Response to Bakhai Objections") [ECF No. 84]; Bakhai's Response in Opposition to BDO's Objections ("Response to BDO Objections") [ECF No. 85].[2] After careful review of the R&R, the briefing, and the governing law, we **OVERRULE** BDO's Objections, **SUSTAIN** Bakhai's Objection, and **ADOPT in part** and **REJECT in part** the R&R.

## THE FACTS

Bakhai, a "licensed certified public accountant who regularly provides services to high-net-worth clients," was a partner in the accounting firm of Morrison Brown Argiz & Farra ("MBAF").

---

[1] An unsealed and redacted version of the BDO Objections can be found at [ECF No. 79].

[2] An unsealed and redacted version of the Response to Bakhai Objections can be found at [ECF No. 82].

R&R at 2 (citing Initial Arbitration Award ("Initial Award") [ECF No. 12-1] at 8–9). On December 30, 2020, Bakhai and the other partners at MBAF "agreed to sell substantially all of the assets of MBAF to [the] Respondent, BDO." Initial Award at 8. As part of the sale, Bakhai signed a "Partnership Agreement" and became a partner at BDO. *See id.* at 9 (explaining that Bakhai received "a grant of 1,101 variable share units in Respondent's partnership"). Under the Partnership Agreement, BDO's "Board of Directors may *for cause* terminate the interest in the partnership of any partner at any time." R&R at 2 (cleaned up & emphasis added) (quoting Partnership Agreement [ECF No. 23-1] § 11.4). "'Cause' is defined in relevant part in the [Partnership Agreement] as follows: '(a) such Partner's material breach of any applicable covenant under this Agreement; (b) such Partner's material breach of any written policy of the Partnership, including but not limited to the Partnership's Code of Conduct; . . . (d) gross negligence or willful misconduct by such Partner in the performance of his/her duties; (e) such Partner's material failure to perform his/her duties or make continued, material economic contributions to the Partnership to an extent that such Partner no longer deserves to remain a Partner; … (i) conduct by such Partner that has caused, or could reasonably be expected to cause, substantial injury, whether monetary or otherwise, to the Partnership, its business or its reputation; [and] (j) such Partner's pursuit of activities that are materially adverse or contrary to the best interests of the Partnership or its business[.]'" Initial Award at 9–10 (quoting Partnership Agreement § 11.5).

"On January 10, 2023, BDO terminated Bakhai's partnership interest." R&R at 3 (citing Initial Award at 13). The Board's decision to terminate Bakhai was based on two events. *First*, BDO believed that Bakhai had leaked confidential information—which was later used in a lawsuit against BDO—about one of BDO's clients. *See* Initial Award at 13 ("BDO suspected that the information contained in paragraph 47 of the complaint came from someone inside the firm. . . . The investigation quickly focused on Bakhai."). *Second*, BDO accused Bakhai of failing to "disengage" with one of his clients

after the client "sexually harassed a firm employee[.]" *Id.* at 21. Bakhai pursued arbitration under the Partnership Agreement and "asserted a claim for breach of contract against BDO, alleging that it terminated his partnership interest in BDO without cause." Initial Award at 3. BDO asserted its own "counterclaims for breach of contract and unjust enrichment." R&R at 3 (citing Initial Award at 3). A three-member arbitration panel (the "Panel") "heard testimony and reviewed evidence for six (6) days." *Ibid.*

A majority of the Panel "concluded that 'Bakhai's partnership interest was not validly terminated for cause' under the circumstances presented." *Id.* at 4 (quoting Initial Award at 24). The Panel rejected BDO's initial argument that Delaware's "Business Judgment Rule applies to the decision of the Board to terminate [Bakhai]." Initial Award at 4. Based on its review of Delaware law, the Panel concluded that the Business Judgment Rule "does not apply to a breach of contract action brought against the corporate entity by the other party to the contract." *Ibid.* The Panel thus found that Bakhai didn't "have to show bad faith" to prevail. *Id.* at 8; *see also id.* at 7 ("In the context of the process and procedure BDO followed in reaching its decision, good faith, or lack thereof, is a factor in our findings and conclusions. It is not, however, the legal standard of review. Rather, we look to see whether the preponderance of the evidence demonstrates that the Respondent had cause, as defined in the contract, to terminate Bakhai's partnership interest. If not, it was in breach of that contract.").

Next, the Panel "was not convinced that Bakhai had leaked any confidential information[.]" R&R at 4 (citing Initial Award at 21). The Panel criticized BDO's inability to present a factual basis to support its belief that Bakhai was the source of the leak. *See* Initial Award at 14 ("No written materials were provided, shown or presented for the Board's review or consideration. . . . No one involved in the investigation testified, either. We don't know first-hand who was interviewed, what they were asked, and what they said. No recorded witness statements or memos from investigators were

presented. We were only presented with the second-hand testimony of Matt Becker, the member of senior management who handed Bakhai the letter of termination. Everything he told us about the investigation had been in turn told to him by someone else. And, understandably, he couldn't provide details of the investigation."). While the Panel acknowledged that "BDO may have been suspicious of Bakhai based on the circumstantial evidence it had[,]" it ultimately held that this "suspicion . . . was not enough to justify termination of Bakhai for cause" and that the testimony of Bakhai and his witnesses was "more convincing than the circumstantial evidence" BDO presented. *Id.* at 20. In addition, the Panel "noted that Bakhai was not given proper due process because he was not given notice nor did he have an opportunity to respond to the accusations against him." R&R at 4; *see also* Initial Award at 20 ("Equally important, Respondent's procedure for the Board to consider such terminations for cause did not provide Claimant with notice of what he was being accused of or an opportunity to present his position to the Board before its decision to terminate his partnership interest. This lack of minimum due process and fundamental fairness made the decision fatally flawed.").

Finally, the Panel wasn't "persuaded that Bakhai defiantly failed to discharge a client." R&R at 4. The Panel accepted Bakhai's explanation that he had, in fact, informed the client's agent "that the firm would disengage, and all future services would be transitional," and that the client "was difficult to get in touch with." Initial Award at 22; *see also id.* at 23 ("Significantly, after Bakhai was terminated, no one at BDO moved to discharge [the client]. Indeed, BDO continued to represent [the client] for several months when [the client], not BDO, ended the relationship. Becker testified that this continued representation was professionally required because, in disengaging from a client, the firm cannot cause the client any undue hardship. Becker also explained that [the client] was difficult to reach, complicating disengagement. These were precisely the same factors that Bakhai said made a prompt discharge of [the client] difficult. This failure to discharge the client after Bakhai was terminated makes

the indignation at Bakhai's failure ring a little hollow."). The Panel also castigated the Board for, once again, failing to give Bakhai notice of this accusation or an opportunity to present his side of the story. *See ibid.* ("The board may have found this explanation to be insufficient. The problem is that they never heard it, as Bakhai was given no notice of the accusation nor an opportunity to respond."). The victim of the alleged sexual harassment also testified that Bakhai "protected" her and that BDO's investigative team "did not ask her about [the client] until months after Bakhai was terminated." *Ibid.* For these reasons, the Panel "determined that BDO's justifications for Bakhai's termination were deficient." R&R at 4 (citing Initial Award at 24).[3]

## THE LAW

### I.   Review of a Magistrate Judge's R&R

District courts must review *de novo* any part of a magistrate judge's disposition that has been properly objected to. *See* FED. R. CIV. P. 72(b)(3). Although Rule 72 itself is silent on the standard of review, the Supreme Court has acknowledged that Congress's intent was to require a *de novo* review only where objections have been properly filed—and not when neither party objects. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate [judge]'s factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."). "If no objection or only [a] partial objection is made to the

---

[3] One member of the Panel, John Chandler, dissented on several grounds. *First*, Chandler found that Delaware's Business Judgment Rule applied to Bakhai's termination and that Bakhai was required to demonstrate bad faith. *See* Initial Award at 30 ("BDO's termination of Bakhai's partnership agreement is the simplest and most classic application of the business judgment rule. Under Delaware law, the business judgment rule prohibits an attack on the board's good faith actions in governing its internal affairs."). *Second*, Chandler concluded that Bakhai and one of his key witnesses (Desiree Perez) were "not credible" and that "[t]he circumstantial evidence [which] points to Mr. Bakhai as the leaker" was sufficient for the Board to terminate Bakhai. *Id.* at 33 n.2. *Third*, Chandler thought that Bakhai's failure to immediately terminate his relationship with a client who had been accused of sexual harassment risked exposing the firm "to enormous monetary and reputation risks[.]" *Id.* at 33. *Fourth*, Chandler pointed to Section 14.7 of the Partnership Agreement—which provides "de novo review of the termination decision by a panel of other partners"—and argued that this provision was "a cure for all [Bakhai's] complaints that he chose not to embrace." *Id.* at 34.

magistrate judge's report, the district judge reviews those unobjected portions for clear error." *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006) (quoting *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) (cleaned up)).

When a party timely objects to a magistrate judge's report and recommendation, the district judge must make a *de novo* determination "of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also Leonard v. Polk Cnty. Sheriff's Dep't*, 2019 WL 11641375, at *1 (M.D. Fla. Apr. 16, 2019) (Jung, J.). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." *United States v. Tardon*, 493 F. Supp. 3d 1188, 1209 (S.D. Fla. 2020) (Lenard, J.) (quoting *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988)). The "[f]ailure to object to the magistrate [judge]'s factual findings after notice precludes a later attack on these findings." *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988) (citation omitted).

## II.     Confirming or Vacating an Arbitration Award

The Federal Arbitration Act ("FAA") "supplies mechanisms for enforcing arbitration awards: a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it." *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 582 (2008) (citing 9 U.S.C. §§ 9–11). "These motions all replace what would otherwise be a separate breach of contract action to enforce or dispute an arbitration award, but they serve different purposes, request different relief, and are governed by different provisions of the FAA." *McLaurin v. Terminix Int'l Co., LP*, 13 F.4th 1232, 1238 (11th Cir. 2021) (citing *Hall St. Assocs.*, 552 U.S. at 582). Since "the FAA reflects a national policy in favor of arbitration agreements," Section 9 of the FAA "allows a party to file a motion to confirm an arbitration award *for any reason*, which 'the court must grant unless the award is vacated, modified or corrected.'" *Ibid.* (cleaned up & emphasis added) (quoting 9 U.S.C. § 9); *see also Frazier v. CitiFinancial Corp., LLC*,

604 F.3d 1313, 1321 (11th Cir. 2010) ("Section 9 of the FAA provides that, upon application of any party to the arbitration, the court *must* confirm the arbitrator's award unless it is vacated, modified, or corrected in accordance with sections 10 and 11 of the statute."). "There is a presumption under the FAA that arbitration awards will be confirmed, and 'federal courts should defer to an arbitrator's decision whenever possible.'" *Frazier*, 604 F.3d at 1321 (quoting *B.L. Harbert Int'l, LLC v. Hercules Steel Co.*, 441 F.3d 905, 909 (11th Cir. 2006)).

If a "successful party files a motion to confirm an arbitration award" under Section 9, "the FAA allows the losing party to oppose the motion to confirm based on the moving party's failure to comply with the statute or the reasons specified in the statute for vacating, modifying, or correcting the award." *McLaurin*, 13 F.4th at 1238–39. Section 10 of the FAA "permits vacatur of arbitration awards *only* in four narrow circumstances":

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*Frazier*, 604 F.3d at 1321 (emphasis added) (quoting 9 U.S.C. § 10(a)(1)–(4)). The "grounds for vacatur listed in § 10(a) are exclusive." *Johnson v. Directory Assistants Inc.*, 797 F.3d 1294, 1299 (11th Cir. 2015); *see also Frazier*, 604 F.3d at 1323 (agreeing that the Supreme Court's decision in *Hall Street* "prohibit[s] *all* extra-statutory grounds for vacatur, whether judicially-created or contractually agreed-upon").

A motion to vacate under Section 10 "is not a mechanism to appeal or otherwise challenge the merits of a dispute conclusively determined in arbitration. . . . [A] district court 'may revisit neither the legal merits of the award nor the factual determinations upon which it relies.'" *Floridians for Solar*

*Choice, Inc. v. PCI Consultants, Inc.*, 314 F. Supp. 3d 1346, 1354 (S.D. Fla. 2018) (Bloom, J.) (quoting *Wiand v. Schneiderman*, 778 F.3d 917, 926 (11th Cir. 2015)), *aff'd sub nom. Floridians for Solar Choice, Inc. v. Paparella*, 802 F. App'x 519 (11th Cir. 2020); *see also Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568–69 (2013) ("Under the FAA, courts may vacate an arbitrator's decision only in very unusual circumstances. That limited judicial review, we have explained, maintains arbitration's essential virtue of resolving disputes straightaway. If parties could take full-bore legal and evidentiary appeals, arbitration would become merely a prelude to a more cumbersome and time-consuming judicial review process." (cleaned up)).

### ANALYSIS

BDO moved to vacate the Award on three of the four grounds listed in Section 10 of the FAA. *First*, BDO argued that the Panel exceeded its authority in violation of 9 U.S.C. § 10(a)(4) "by imposing its own policy choice as to what the law should be rather than identifying and applying the proper legal standard for the contract at issue." Motion to Vacate at 10. BDO also accused the Panel of "improperly modif[ying] the terms of the parties' Partnership Agreement" and adopting "contradictory findings[.]" *Id.* at 12, 14. *Second*, BDO alleged that the Panel was "guilty of misconduct" under 9 U.S.C. § 10(a)(3) because it prevented BDO from "presenting evidence of its investigation into Bakhai's misconduct or direct evidence that Bakhai had disclosed confidential information to a third party[.]" *Id.* at 14. *Third*, BDO urged us to vacate the Panel's decision under 9 U.S.C. § 10(a)(1) because the arbitration award was "procured by fraud"—the fraud being that one of Bakhai's key witnesses, Desiree Perez, "lied during her deposition[.]" *Id.* at 18–19.

Magistrate Judge Lett recommended that we deny all three of BDO's arguments. *First*, Magistrate Judge Lett rejected BDO's "authority" argument because "[a]rbitrators do not exceed their powers when they make errors, even a serious error." R&R at 6 (quoting *Gherardi v. Citigroup Glob. Markets, Inc.*, 975 F.3d 1232, 1237 (11th Cir. 2020)). *Second*, she concluded that "there was no

misconduct by the panel because there were reasonable bases for limiting the evidence, none of which prejudiced BDO." *Id.* at 10. *Third*, she reasoned that the arbitration award wasn't procured by fraud because Perez's allegedly perjurious testimony didn't "materially relate[ ] to an issue in the arbitration." *Id.* at 14. BDO, unsurprisingly, objects to all three of Magistrate Judge Lett's recommendations *and* to a separate issue concerning post-judgment interest. *See generally* BDO Objections. Bakhai also filed a "limited objection" to a specific factual finding Magistrate Judge Lett made "in the course of rejecting BDO's argument that the award was procured by fraud[.]" Bakhai Objections at 1. We'll discuss (and reject) each of these objections in turn.

## I.   The Panel Didn't Exceed its Authority

We'll start with BDO's objection that Magistrate Judge Lett "was wrong to conclude that the majority [of the Panel] did not exceed its authority." BDO Objections at 13. Section 10(a)(4) of the FAA "authorizes a federal court to set aside an arbitral award 'where the arbitrator exceeded his powers.'" *Sutter*, 569 U.S. at 569 (cleaned up) (quoting 9 U.S.C. § 10(a)(4)). "A party seeking relief [under § 10(a)(4)] bears a heavy burden. It is not enough to show that the arbitrator committed an error—or even a serious error." *Ibid.* Because we must interpret and apply § 10(a)(4) "very narrowly[,]" "[j]udicial review of arbitration decisions is 'among the narrowest known to the law.'" *Gherardi*, 975 F.3d at 1237 (quoting *Bamberger Rosenheim, Ltd. v. OA Dev., Inc.*, 862 F.3d 1284, 1286 (11th Cir. 2017)).

So, "[w]e must defer entirely to the arbitrator's interpretation of the underlying contract no matter how wrong we think that interpretation is." *Wiregrass Metal Trades Council AFL-CIO v. Shaw Env't & Infrastructure, Inc.*, 837 F.3d 1083, 1087 (11th Cir. 2016); *see also Sutter*, 569 U.S. at 569 ("Because the parties 'bargained for the arbitrator's construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits." (quoting *E. Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000))). Indeed, "under our current scheme, an arbitrator's actual reasoning is of such little importance to our review that it need not be

explained—the decision itself is enough." *Gherardi*, 975 F.3d at 1237. At the same time, "an arbitrator may not ignore the plain language of the contract. . . . [A]n arbitrator may not issue an award that contradicts the express language of the agreement. It also means that an arbitrator may not modify clear and unambiguous contract terms." *Wiregrass Metal*, 837 F.3d at 1088 (cleaned up). Put another way, an arbitrator cannot issue "an award that 'simply reflects his own notions of economic justice' rather than 'drawing its essence from the contract[.]'" *Sutter*, 569 U.S. at 569 (quoting *E. Associated Coal*, 531 U.S. at 62).

The upshot of all this is that an arbitration panel acts within the scope of its authority when it interprets a contract (rightly or wrongly)—but it exceeds its authority when it modifies or ignores the contract's language. *See ibid.* ("So the sole question for us is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong."); *Wiregrass Metals*, 837 F.3d at 1088 ("The outcome in this case depends on whether we characterize the arbitrator's decision as an interpretation of the collective bargaining agreement or a modification of it.").

Magistrate Judge Lett rejected all three of BDO arguments "suggesting that the [P]anel exceeded its authority." R&R at 6. *First*, BDO argued that the Panel "improperly modified the terms of the parties' Partnership Agreement that grants the Board authority and discretion to terminate Bakhai's partnership interest for cause." Motion to Vacate at 10. Magistrate Judge Lett found that this "argument is not well-taken" because the Panel explicitly determined that "the [Partnership Agreement] was devoid of" the sort of "deferential language" that would require it to "defer[ ] to corporate decisions made in good faith." R&R at 8 (citing Initial Award 7). BDO says that Magistrate Judge Lett "erred in concluding that the Partnership Agreement must contain the exact language referenced by the majority of the Panel, as opposed to determining that the plain contract language itself afforded ultimate discretion to the Board to make termination decisions." *Id.* at 14. And this

error, BDO insists, caused the Panel to "improperly modif[y] the terms of the parties' Partnership Agreement[.]" *Ibid.*

Notwithstanding BDO's deliberate use of the term "modified," this objection really boils down to BDO's dissatisfaction with how the Panel interpreted the Partnership Agreement. The Panel found that the Partnership Agreement "simply says that a partner's interest may be terminated 'for cause' by a vote of 75% of the board" and that Bakhai "did not contract to give the BDO board final, binding authority or sole and absolute discretion in determining if there was cause to terminate his partnership interest." Initial Award at 7; *see also* Partnership Agreement § 11.4 ("The Board of Directors, by the affirmative vote of at least seventy-five percent (75%) of the total number of its members in office at the time eligible to vote on the proposal, may for cause (as defined in Section 11.5) terminate the interest in the Partnership of any Partner at any time."). BDO says that both the Panel and Magistrate Judge Lett improperly ignored "the express language in Section 11.5," which "defines each case where 'cause' entitled the Board to terminate Bakhai's interest to be 'in the determination of the Board of Directors.'" BDO Objections at 14 (quoting Partnership Agreement § 11.5). But this quibbling match over how the Panel should have interpreted the interplay between § 11.4 and § 11.5 of the Partnership Agreement—and whether the Partnership Agreement's language required significant deference to BDO's board—is precisely the type of alleged error we can't (and won't) second guess. *See Sutter*, 569 U.S. at 569 ("Because the parties 'bargained for the arbitrator's construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits." (quoting *E. Associated Coal*, 531 U.S. at 62)); *Hidroelectrica Santa Rita S.A. v. Corporacion AIC, S.A.*, 119 F.4th 920, 928 (11th Cir. 2024) ("Even if we were to accept that this interpretation is a misreading of the contract, a court should not reject an award on the ground that the arbitrator misread the contract. That is because an arbitrator does not exceed his power when he makes errors." (cleaned up)).

*Second*, BDO claimed that "once the [P]anel determined the business judgment rule was inapplicable, the panel 'improperly imposed its own view of what the law should be.'" R&R at 6 (quoting Motion to Vacate at 8). Magistrate Judge Lett rejected this argument, too, noting that "neither an 'incorrect legal conclusion' nor a 'manifest disregard of the law' is recognized 'as grounds for vacating or modifying' an award." *Id.* at 7 (quoting *S. Comm. Servs., Inc. v. Thomas*, 720 F.3d 1352, 1360 (11th Cir. 2013)). BDO says that Magistrate Judge Lett's conclusion here "misses the mark." BDO Objections at 16. In its view, the issue isn't whether "the majority of the Panel exceeded its authority 'by concluding that the business judgment rule did not apply[,]'"; instead, BDO says, the issue is Magistrate Judge Lett's failure to recognize that the Panel didn't "identify[ ] and apply[ ] the proper legal standard for determining 'cause' under the parties' Partnership Agreement." *Ibid.* The Panel found that (if Delaware's Business Judgment Rule doesn't apply) the proper legal standard is "whether the preponderance of the evidence demonstrates that the Respondent had cause, as defined in the contract, to terminate Bakhai's partnership interest." Initial Award at 7. BDO accuses the Panel of "manufactur[ing] [this] standard of review—without any supporting case law—based on hypothetical scenarios involving landlord-tenant situations that are irrelevant to this case." *Ibid.*

We see no flaw in Magistrate Judge Lett's reasoning. She correctly observed that an arbitrator doesn't exceed his authority *even* if he makes "incorrect legal conclusion[s]" and engages in a "manifest disregard of the law[.]" *S. Comm. Servs.*, 720 F.3d at 1360; *see also DIRECTV, LLC v. Arndt*, 546 F. App'x 836, 841 (11th Cir. 2013) ("The arbitrator's award may have been ugly, and could have been mistaken, incorrect, or in manifest disregard of the law, but those are not grounds for vacating the award under § 10(a)(4)."). If the Panel indeed "manufactured a standard of review" that finds no support under Delaware law, *that* would be a legal error. *Cf. Blake v. U.S. Att'y Gen.*, 945 F.3d 1175, 1179 (11th Cir. 2019) (describing "applying the wrong legal standard" as a "legal error[ ]"). And, while that would be unfortunate, "courts 'do not review the arbitrator's award for underlying legal error.'"

*Mendez v. T-Mobile USA Inc.*, 746 F. Supp. 3d 1377, 1381 (S.D. Fla. 2024) (Altonaga, C.J.) (quoting *Fowler v. Ritz-Carlton Hotel Co., LLC*, 579 F. App'x 693, 699 (11th Cir. 2014)). We therefore agree with Magistrate Judge Lett that the Panel "did not exceed its authority by concluding that the business judgment rule did not apply." R&R at 7.[4]

    *Third*, BDO claimed that the Award was tainted by "contradictory findings." *Id.* at 8. BDO believed "that by accepting the testimony regarding Bakhai's poor performance, the panel concedes that there was indeed cause to terminate Bakhai under section 11.5 of the [Partnership Agreement]." *Id.* at 9. Magistrate Judge Lett rejected this argument for two reasons: *one*, because the "scope of the arbitration proceeding was limited to BDO's [two] specific grounds for termination"—which didn't include Bakhai's allegedly "poor performance"; and *second*, because Bakhai would have become an "at-will employee" on July 1, 2023, so the witness's testimony that Bakhai would've been terminated for poor performance *later* was irrelevant, since "BDO needed cause to terminate Bakhai in January 2023." *Ibid.* BDO weakly repeats this same argument in its Objections to us—*without* explaining how Magistrate Judge Lett erred. *See* BDO Objections at 17–18 ("It is therefore inconsistent for the majority to have ruled in Bakhai's favor, while simultaneously accepting that the definition of 'cause' in subparagraph (e) of Section 11.5 of the Partnership Agreement includes '[a] Partner's material failure to perform his/her duties or make continued, material economic contributions to the Partnership to an extent that such Partner no longer deserves to remain a Partner.' There is no way to reconcile these contradictory findings. Nor does the R&R try to reconcile them.").

---

[4] In any event, Bakhai persuasively argues that "the Panel correctly interpreted the law" because, "[u]nder Delaware law . . . where an employee may only be terminated for cause, the employer must prove that cause actually existed." Response to BDO Objections at 15 & n.14 (citing *Haney v. Lamb*, 312 A.2d 330, 335 (Del. Super. Ct. 1973)); *see also E.M.D. Sales, Inc. v. Carrera*, 604 U.S. 45, 47 (2025) ("The usual standard of proof in civil litigation is preponderance of the evidence."). The Panel's reliance on the "preponderance of the evidence" standard thus doesn't appear to constitute an incorrect legal conclusion—much less a manifest disregard of the law.

Magistrate Judge Lett is exactly right. Bakhai *wasn't* terminated for "poor performance"; he was fired for "leak[ing] confidential firm information to a BDO client and his legal team" and for "intentionally disregarding directions to discharge a client who had sexually harassed a BDO employee." Initial Award at 3. That the Panel found Bakhai's "poor performance" justified a reduction of his "lost salary claim" doesn't contradict (or undermine) its holding that BDO's proffered reasons for firing Bakhai—which, again, had nothing to do with his "poor performance"—didn't amount to "cause" under the Partnership Agreement's terms. *Id.* at 26; *see also* R&R at 9 ("The panel did not evaluate whether there was cause in January 2023 based on Bakhai's seemingly 'poor performance,' and BDO cannot now assert such grounds for the first time under the guise of 'contradictory findings.'"). And BDO's conclusory refrain that these findings are somehow "contradictory" doesn't strike us as a legally sufficient objection to the R&R. *See Tardon*, 493 F. Supp. 3d at 1209 ("Frivolous, conclusive, or general objections need not be considered by the district court.").

Magistrate Judge Lett, in short, properly concluded that the Panel *didn't* exceed its authority in violation of 9 U.S.C. § 10(a)(4). We therefore **OVERRULE** BDO's first objection.

## II.     The Panel Reasonably Limited Evidence

In its second objection, BDO contends that Magistrate Judge Lett "erred in concluding that the [Panel] had a reasonable basis for preventing BDO from presenting pertinent, material evidence." BDO Objections at 18. BDO had argued in its Motion to Vacate that "it was prejudiced from presenting material evidence of (1) BDO's investigation into Bakhai's misconduct; and (2) Bakhai's disclosure of confidential information." R&R at 10 (citing Motion to Vacate at 13–17). Magistrate Judge Lett found that the Panel reasonably limited this evidence, and that these limitations didn't prejudice BDO.

Starting with "the evidence regarding Bakhai's termination," Magistrate Judge Lett explained that "an exhibit summarizing the purported grounds for Bakhai's termination" was reasonably

excluded as hearsay, and that the pertinent witness was still able to testify "about what she was told and what was communicated to the Board, while still using the document to refresh her memory as needed." *Id.* at 10–11. As for the "evidence of Bakhai's alleged disclosure of confidential information[,]" Magistrate Judge Lett concluded that it wasn't "unreasonable [for] the panel [to choose] to limit the additional circumstantial evidence considering the credible and more convincing evidence presented by Bakhai." *Id.* at 12. BDO maintains that these evidentiary limitations "prejudiced BDO's right to receive a fundamentally fair hearing." BDO Objections at 21.

A district court may vacate an arbitration award if "the arbitrators were guilty of misconduct in refusing . . . to hear evidence pertinent and material to the controversy[.]" 9 U.S.C. § 10(a)(3). "Arbitrators 'enjoy wide latitude in conducting an arbitration hearing,' and they 'are not constrained by formal rules of procedure or evidence.'" *Rosensweig v. Morgan Stanley & Co., Inc.*, 494 F.3d 1328, 1333 (11th Cir. 2007) (quoting *Robbins v. Day*, 954 F.2d 679, 685 (11th Cir. 1992)). An arbitrator needn't "consider all evidence the parties seek to introduce but may reject evidence that is cumulative or irrelevant." *Scott v. Prudential Sec., Inc.*, 141 F.3d 1007, 1017 (11th Cir. 1998). "[A] federal court may vacate an arbitrator's award only if the arbitrator's refusal to hear pertinent and material evidence prejudices the rights of the parties to the arbitration proceedings." *Rosensweig*, 494 F.3d at 1333 (cleaned up). Although the Eleventh Circuit hasn't specifically defined what constitutes "prejudice" in this context, it has found prejudice when the arbitrator's evidentiary ruling "*entirely* prevents a party from presenting a key witness' material, noncumulative testimony." *CM S. E. Tex. Houston, LLC v. CareMinders Home Care, Inc.*, 662 F. App'x 701, 704 (11th Cir. 2016) (emphasis added) (citing *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20–21 (2d Cir. 1997)). That said, "this subsection does not warrant vacatur where an arbitrator merely made an erroneous discovery or evidentiary ruling; rather, a plaintiff must show that the arbitrator's handling of these matters was in bad faith or so gross as to amount to affirmative misconduct[.]" *Pochat v. Lynch*, 2013 WL 4496548, at *10 (S.D. Fla. Aug. 22,

16

2013) (Rosenbaum, J.) (citing *United Paperworkers Int'l Union AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 40 (1987)).

The bulk of BDO's second objection focuses on the Panel's alleged "refusal to admit evidence that Bakhai spoliated evidence of his guilt." BDO Objections at 18. According to BDO, Magistrate Judge Lett failed to recognize that "BDO was precluded from presenting any fact or expert testimonial evidence demonstrating Bakhai's guilty conduct—his deletion of evidence regarding his disclosure of confidential information in violation of his BDO Partnership Agreement." *Id.* at 19. We agree with Bakhai that this argument reflects a "misrepresentation of the record, and a fantasy of BDO's imagination." Response to BDO Objections at 18.

BDO *was* permitted to present an extraction report of Bakhai's cell phone, *see* Extraction Report [ECF No. 26-11], and (as Magistrate Judge Lett correctly noted) the Panel explicitly considered the fact that "the record of calls and text messages on Bakhai's cell phone in the weeks prior to the complaint being filed were deleted (implying a cover-up)." Initial Award at 15. Despite this evidence, a majority of the Panel found "Bakhai's explanation or response to this circumstantial evidence" more credible than BDO's spoliation theory. *Ibid.* While BDO may disagree with this conclusion, the Panel was well within its discretion to believe Bakhai over BDO's circumstantial evidence. *See Aegis Cap. Corp. v. Cohen*, 2019 WL 7168305, at *2 (S.D. Fla. Dec. 24, 2019) (Gayles, J.) ("But the Court may not vacate an award because a party disagrees with a panel's evidentiary decisions. . . . Merely stating that the panel 'disregarded' Cohen's evidence does not, without more, demonstrate prejudice.").

As for BDO's belief that the Panel prevented it from "proffer[ing] expert testimony on the critical issue of spoliation," BDO Objections at 19, Bakhai is right that BDO "never listed or identified any expert" at all, Response to BDO Objections at 18; *see generally* BDO's Amended Witness and Exhibit List [ECF No. 36-10]. We won't allow BDO to claim prejudice at this late stage of the game when it failed, before the arbitral Panel, to list (or even identify) the evidence it now says it should've

been required to present. *See Floridians for Solar Choice*, 314 F. Supp. 3d at 1359 ("[W]hen a party challenges an evidentiary decision of the arbitration panel, a federal court may vacate the award only if the arbitrator's refusal to hear pertinent and material evidence prejudiced the rights of the parties to the arbitration proceedings[.]" (citing *Rosensweig*, 494 F.3d at 1333)).

In the remaining part of this objection, BDO says that Magistrate Judge Lett "failed to consider the Panel's [refusal to admit evidence regarding BDO's investigation of Bakhai's misconduct] in the context of what occurred at the hearing[.]" BDO Objections at 20. Here, BDO argues that *both* the Panel and Magistrate Judge Lett ignored Bakhai's "gamesmanship"—which prevented BDO from introducing the exhibit in question. *See ibid.* ("Bakhai had the same document on his own exhibit list, agreed to pre-admit it into evidence without objection, and then abandoned his agreement and objected to its admission mere hours before the start of the final hearing. The Panel allowed him to engage in this gamesmanship and refused to allow BDO to admit the exhibit into evidence."). BDO also complains that it could have overcome this "gamesmanship" if "the Panel had not required that the final hearing be completed in five days [and] had not limited BDO's time to less than 20 hours[.]" *Ibid.*

Even assuming that Bakhai engaged in "gamesmanship," BDO's argument ignores Magistrate Judge Lett's reasoning. *See* R&R at 11 ("The particular document was drafted by BDO's counsel and prepared for BDO's corporate representative's 30(b)(6) deposition. During arbitration, the representative testified that she did not prepare the specific document, but she relied on the document in preparation of her deposition. Counsel for Bakhai objected to the summary being entered into evidence on hearsay grounds. The panel reasonably sustained the objection and limited the evidence reasoning that the document was offered to corroborate testimony concerning information BDO insists was presented to the Board at the time Bakhai was terminated. In other words, the document was an out-of-court statement offered 'to be the truth of' what was presented to the panel." (cleaned

up) (citing July 11, 2025, Hr'g Tr. [ECF No. 36-4] at 52)). BDO *doesn't* dispute Judge Lett's

determination that this exhibit constituted inadmissible hearsay. Nor does BDO disagree that a witness

*was* allowed to testify "about what she was told and what was communicated to the Board, while using

the document to refresh her memory as needed." R&R at 11; *see also Jones v. UPS Ground Freight*, 683

F.3d 1283, 1294 (11th Cir. 2012) ("The most obvious way that hearsay testimony can be reduced to

admissible form is to have the hearsay declarant testify directly to the matter at trial."). Despite BDO's

complaints about "gamesmanship" and the Panel's time limits, in other words, Magistrate Judge Lett

rightly found that BDO *got the chance* to present this evidence about the Board's investigation into

Bakhai's alleged misconduct. *See* Initial Award at 20 ("In sum, we understand that BDO may have

been suspicious of Bakhai based on the circumstantial evidence it had."). That the Panel didn't grant

BDO carte blanche to present hearsay evidence (without limitation) wasn't prejudicial and isn't

grounds for vacatur. *See Scott*, 141 F.3d at 1017 ("An arbitrator need not consider all the evidence the

parties seek to introduce but may reject evidence that is cumulative or irrelevant.").

Magistrate Judge Lett properly found that the Panel's decision to limit evidence about BDO's

investigation and Bakhai's alleged spoliation was reasonable. *See Rosensweig*, 494 F.3d at 1333 ("[W]e

inquire whether there was any reasonable basis for [the arbitrator's] decision [to limit evidence]."). =

BDO, therefore, wasn't prejudiced by these evidentiary rulings, and the Panel didn't commit any

misconduct under § 10(a)(3). BDO's second objection is **OVERRULED**.

### III.     The Alleged Fraud Was Immaterial

BDO's third objection (*and* Bakhai's sole objection) concern the same issue: whether "the

Award was procured by fraud due to perjured testimony from Desiree Perez—a witness proffered by

Bakhai in his affirmative case." R&R at 13. Magistrate Judge Lett found that BDO "[fell] just short of

satisfying all three elements to require vacatur based on fraud." *Ibid.* Magistrate Judge Lett agreed *both*

that Perez gave false testimony, *see id.* at 13–14 ("Ms. Perez testified that she only spoke to Mr.

Schwiep, counsel for Bakhai, once before her May 15, 2024 deposition, which was false."), *and* that the falsity of Perez's testimony couldn't have been discovered earlier, *see id.* at 14 ("The perjured testimony was only discovered post-arbitration when Bakhai submitted a request for fees. Otherwise, BDO did not have a need to review Bakhai's time records, and therefore, would not have discovered the discrepancy in Ms. Perez's testimony prior to or during the arbitration."). But, Magistrate Judge Lett continued, Perez's false testimony wasn't "materially related to an issue in the arbitration" because: (1) "Ms. Perez's preparation for her deposition is a tangential issue to whether Bakhai indeed disclosed the confidential information"; and (2) "Ms. Perez was not the sole witness who unequivocally stated Bakhai was not the source of the confidential information." *Id.* at 14–15.

Both sides take issue with different portions of Magistrate Judge Lett's recommendation. Bakhai disagrees that Perez's testimony was perjurious because "[t]here is simply no support for the conclusion that Ms. Perez willfully lied in mis-recalling that a conversation occurred longer than one week prior to her deposition." Bakhai Objections at 4. BDO, on the other hand, insists that Perez's false testimony was *material* because her credibility was (BDO believes) crucial to the Panel's ultimate decision. *See* BDO Objections at 11–12 ("Contrary to the R&R's finding, the impact of the fraud was material because it persuaded the majority that Perez was a credible, independent, and uninterested witness. . . . Had the majority learned about Perez's fabricated testimony and Bakhai's counsel's perpetuation of it during the hearing or before issuing the Interim Award, the majority likely would have deemed Perez's other testimony (which was heavily relied upon) as fruit-from-the-poisonous tree and concluded, as the dissent did, that Perez was not a credible witness and that her testimony was not entitled to any weight[.]" (cleaned up)).

"A district court 'may,' in its discretion, vacate an arbitration award 'upon the application of any part to the arbitration' if 'the award was procured by corruption, fraud, or undue means.'" *NuVasive, Inc. v. Absolute Med., LLC*, 71 F.4th 861, 878 (11th Cir. 2023) (quoting 9 U.S.C. § 10(a)(1)).

"[C]ourts have relied upon a three part test to determine whether an arbitration award should be vacated for fraud. First, the movant must establish the fraud by clear and convincing evidence. Second, the fraud must not have been discoverable upon the exercise of due diligence prior to or during the arbitration. Third, the person seeking to vacate the award must demonstrate that the fraud materially related to an issue in the arbitration." *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1375, 1383 (11th Cir. 1988) (cleaned up); *see also NuVasive,* 71 F.4th at 878 (same). Although the movant isn't required "to establish that the result of the proceeding would have been different had the fraud not occurred[,]" *Bonar*, 835 F.2d at 1383, it must show that the allegedly fraudulent conduct "prevented [it] from fully and fairly presenting [its] case[,]" *Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1287 (11th Cir. 2000).[5]

We'll start with Bakhai's "limited objection" to Magistrate Judge Lett's finding that "there was evidence of 'perjured testimony' by a nonparty witness." Bakhai Objections at 1. Bakhai concedes that Perez incorrectly testified that she had only spoken with Mr. Schwiep (Bakhai's counsel) *once* before her deposition. *See id.* at 3 ("Attorney time records, however, reflect Ms. Perez spoke to Bakhai's counsel on April 12, May 1, and May 9."). Still, Bakhai argues that this incorrect testimony can't (strictly speaking) be considered "perjury" because "there [isn't] any evidence of a willful intent to deceive." *Ibid.*; *see also United States v. Cavallo*, 790 F.3d 1202, 1220 (11th Cir. 2015) ("[P]erjury is testimony given with the willful intent to provide false testimony and not as a result of a mistake, confusion, or faulty memory."). In Bakhai's view, then, Magistrate Judge Lett's decision to characterize Perez's false statement as perjury "unfairly and improperly impugns the integrity and character of a prominent

---

[5] The "fully and fairly" standard comes from FED. R. CIV. P. 60(b)(3), which "allows a court to grant relief from a final judgment if the moving party proves by clear and convincing evidence that an adverse party has obtained the verdict through fraud, misrepresentation, or other misconduct." *Frederick*, 205 F.3d at 1287. The Eleventh Circuit has held that "[t]he standard for determining whether a party should be relieved of a final judgment under 60(b)(3) is nearly identical to the standard for determining whether an award should be vacated for fraud under § 10(a)." *Bonar*, 835 F.2d at 1383 n.8.

nonparty witness, with potential far-reaching ramifications unrelated to this case." Bakhai Objections at 1.

We'll sustain Bakhai's limited objection. We agree with both BDO and Magistrate Judge Lett that Perez falsely testified about how many times she met with Bakhai's attorney before her deposition. *See* R&R at 13–14 ("Ms. Perez testified that she only spoke to Mr. Schwiep, counsel for Bakhai, once before her May 15, 2024 deposition, which was false."); Response to Bakhai Objections at 2 ("Bakhai's attorneys' time records reveal that Perez did not have just one short call with Mr. Schwiep a week before her deposition to discuss logistics, as she testified."). But factually incorrect testimony isn't necessarily perjurious. To constitute perjury, the false statement must "concern[ ] a material matter," and it must have been made "with the willful intent to provide false testimony." *United States v. Singer*, 963 F.3d 1144, 1164 (11th Cir. 2020) (cleaned up). Magistrate Judge Lett acknowledged that Perez's statement wasn't material. *See* R&R at 14 ("BDO does not demonstrate that Ms. Perez's perjured testimony materially related to an issue in the arbitration."); *see also post*, at 22–24 (discussing the materiality of Perez's testimony). And BDO hasn't presented *any evidence* (let alone clear and convincing evidence) that Perez *purposely lied* about how many times she met with Bakhai's counsel. *Cf. Bonar*, 835 F.2d at 1383 ("[T]he movant must establish the fraud by clear and convincing evidence."). Since Perez's incorrect testimony lacks both these elements of perjury, we **SUSTAIN** Bakhai's objection and **REJECT** this aspect of the R&R.

In any event, Magistrate Judge Lett still reached the right conclusion overall because BDO "did not demonstrate that the fraud was materially related to an issue in the arbitration whereby BDO was deprived of a fair hearing." R&R at 16. BDO maintains that Perez's false statement was material for two reasons. *One*, BDO claims that, "[i]f the Panel knew Perez perjured herself, it would have discredited her and her testimony[.]" BDO Objections at 10–11. This finding would have been catastrophic for Bakhai, BDO says, since the Panel relied on her testimony to find that Bakhai didn't

leak confidential client information. *See id.* at 11 ("The only other witness who testified on this subject—Alex Spiro—is Perez's attorney, and he parroted what was learned from Perez and did not have any independent knowledge as to who the source of the information was. While the R&R goes on to say that the majority noted that there were other possible sources of information, these mere possibilities would have fallen down like a house of cards if the Panel had discovered that Perez's testimony was a fraud." (cleaned up)). *Two*, BDO contends that Perez's decision to lie about how many times she met with Bakhai's counsel is evidence "that she and Bakhai were in cahoots" and that "she had already been coached by Bakhai's attorneys in advance of her deposition." *Id.* at 11, 13.

We reject both arguments. Bakhai used Perez's testimony to corroborate Bakhai's denial—which the Panel majority found credible standing alone. *See* Initial Ward at 20 ("We found the Claimant's denial that he was the source of the confidential information, as confirmed by the testimony of Mr. Spiro and Ms. Perez, to be credible, and more convincing than the circumstantial evidence presented to us.").[6] Relying on the Panel's factual findings, Magistrate Judge Lett concluded that "BDO was not deprived of a fair hearing since the Panel considered several other factors and did not base its decision solely on perjured, tangentially related testimony." R&R at 15. In its only response to this straightforward conclusion, BDO speculates about what the Panel *might* have done and then—without evidence—accuses Bakhai and his lawyers of conspiring with Perez to intentionally deceive the Panel. *See* BDO Objections at 11–12 ("Had the majority learned about Perez's fabricated testimony

---

[6] Referencing a portion of the arbitration transcript, BDO says that Alex Spiro's testimony is effectively useless since he "is Perez's attorney, and he parroted what was learned from Perez and did not have any independent knowledge as to who the source of the information was." BDO Objections at 11 (citing July 17, 2024, Hr'g Tr. [ECF No. 36-6] at 11). But the transcript doesn't support this position. On the contrary, Spiro didn't mention Perez at all. Instead, he explained that neither he nor his associates received the confidential client information from Bakhai. *See* July 17, 2024, Hr'g Tr. at 11 ("[Spiro]: I can tell you directly the answer I keep telling you, which is that Mr. Bakhai did not provide this information to me or the attorneys working with me."). What Spiro admitted is that "it [is] possible that somebody else that provided me information got information from Mr. Bakhai[.]" *Ibid.* Either way, the record doesn't support BDO's contention that Spiro merely regurgitated Perez's testimony.

and Bakhai's counsel's perpetuation of it during the hearing or before issuing the Interim Award, the majority likely would have deemed Perez's other testimony (which was heavily relied upon) as fruit-from-the-poisonous tree and concluded, as the dissent did, that Perez was not a credible witness and that her testimony was not entitled to any weight[.]" (cleaned up)). But "vague, remote, and speculative charges . . . cannot support an order to vacate an arbitration award." *Scott*, 141 F.3d at 1015.

BDO also cites two Eleventh Circuit cases, *Bonar* and *NuVasive*, for its view that "the disclosure of Perez's testimony . . . could have reversed the entire decision in BDO's favor," BDO Objections at 13—but neither case applies on our facts. In *Bonar*, the Eleventh Circuit found fraud because an expert witness "committed perjury by falsifying his credentials" and because it concluded that, if the expert had been truthful, "it is extremely doubtful that he would have been permitted to testify as an expert, and the arbitrators would have heard none of [his] testimony." 835 F.2d at 1385. BDO concedes that Perez's false statement *wouldn't* have "kept her from testifying," BDO Objections at 11, so *Bonar* is simply inapposite here.

*NuVasive* involved a lawyer who told a witness *how* to answer while he was being cross-examined. *See* 71 F.4th at 878 ("NuVasive established by clear and convincing evidence that Hawley was reading Soufleris's messages in real-time while Hawley was testifying and conforming his testimony to Soufleris's messages." (cleaned up)). The Eleventh Circuit found that this fraudulent act warranted vacatur, even though the testimony "had no impact on the arbitration panel," because "the Final Award was based on a failure of proof as to loss causation and the amount of damages, not the subject matter of [the witness's] testimony." *Id.* at 879. *NuVasive* isn't relevant here for two reasons: *first*, because Perez's false testimony wasn't "materially related to an issue in the arbitration[,]" *Bonar*, 835 F.2d at 1383; and *second*, BDO has *no evidence* that Bakhai and Perez conspired to defraud the Panel.

Although BDO showed that Perez may have made a misstatement during the arbitration proceedings, Magistrate Judge Lett correctly found that this false statement wasn't material and that

the Initial Award wasn't procured through fraud. In short, "[BDO's] challenge—cloaked in the nomenclature of fraud—amounts to no more than vehement disagreement with the Arbitrator's findings on the breach of contract claim." *Floridians for Solar Choice*, 314 F. Supp. 3d at 1355. BDO's third objection is therefore **OVERRULED**.

## IV.     The Post-Judgment Interest Rate

BDO's final objection is "that the post-judgment interest rate applied to any judgment in favor of Bakhai should be consistent with 28 U.S.C. § 1961." BDO Objections at 21. The Panel held that Bakhai's damages "shall accrue interest from the date hereof at the rate of 10.5% annum pursuant to [DEL. CODE tit. 6 § 2301(a)]." Initial Award at 27–28. BDO would have us effectively rewrite this part of the Initial Award and replace the 10.5% interest rate with the post-judgment interest rate set by 28 U.S.C. § 1961. Although Magistrate Judge Lett's R&R didn't reach this issue, *see generally* R&R, we nevertheless overrule this objection on *de novo* review because it is legally meritless.

We cannot vacate, modify, or correct an arbitration award outside of the narrow circumstances Congress laid out in Sections 10 and 11 of the FAA. *See Frazier*, 604 F.3d at 1321 ("Section 9 of the FAA provides that, upon application of any party to the arbitration, the court *must* confirm the arbitrator's award unless it is vacated, modified, or corrected in accordance with sections 10 and 11 of the statute."). BDO has cited no authority for its view that 28 U.S.C. § 1961 supersedes a post-judgment interest rate awarded by an arbitration panel. *See* BDO Objections at 21. And that's probably because all the cases on this issue say precisely the opposite. *See Mid Atl. Cap. Corp. v. Bien*, 956 F.3d 1182, 1208–09 (10th Cir. 2020) ("[T]he federal postjudgment interest rate in 28 U.S.C. § 1961 applies *unless* . . . the parties put the postjudgment-interest issue before the arbitration panel *and* the panel similarly awards postjudgment interest clearly and unequivocally, then the awarded rate applies." (first emphasis added)); *Tricon Energy Ltd. v. Vinmar Int'l. Ltd.*, 718 F.3d 448, 458 (5th Cir. 2013) ("[I]nsofar as an arbitration panel sets a postjudgment rate as a matter of contract interpretation, its award is

entitled to almost absolute deference.").[7] Since the law refutes BDO's position that "the post-judgment interest rate applied to any judgment in favor of Bakhai should be consistent with 28 U.S.C. § 1961[,]" BDO Objections at 21, we **OVERRULE** BDO's final objection.

*          *          *

Magistrate Judge Lett concluded her R&R by "finding that none of the exclusive statutory grounds to vacate an arbitration award apply[.]" R&R at 16. We likewise find that BDO hasn't justified vacatur of the Panel's arbitration award under any of § 10(a)'s four statutory exceptions. Without a valid reason to vacate, we "must confirm the arbitrator's award[.]" *Frazier*, 604 F.3d at 1321.

<h3 style="text-align:center">CONCLUSION</h3>

Having conducted a careful, *de novo* review of the R&R, the record, the pleadings, and the applicable law, we **ORDER AND ADJUDGE** as follows:

1. Magistrate Judge Lett's R&R [ECF No. 75] is **ADOPTED in part** and **REJECTED in part**. Bakhai's Objection [ECF No. 76] is **SUSTAINED** as to Magistrate Judge Lett's finding that Perez committed perjury. BDO's Objections [ECF No. 80] are **OVERRULED**.

2. Bakhai's Petition to Confirm Arbitration Award [ECF No. 1] and his Motion to Confirm Final Award [ECF No. 40] are **GRANTED**.

3. BDO's Motion to Vacate Arbitration Award [ECF No. 23] is **DENIED**.

4. All other pending motions are **DENIED as moot** and any pending deadlines and hearings are **TERMINATED**. The Clerk shall **CLOSE** the case.

5. We'll issue final judgment under Rule 58 separately.

---

[7] And that makes sense. Otherwise, the losing party in an arbitration proceeding could automatically reduce the unfavorable post-judgment interest rate set by the arbitration panel to the rate under 28 U.S.C. § 1961 by merely filing a motion to vacate the arbitration award—even if the motion is completely frivolous.

**DONE AND ORDERED** in the Southern District of Florida on July 29, 2025.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record